280 F.2d 676
 108 U.S.App.D.C. 128
 JACKSON BROADCASTING & TELEVISION CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Board of
Trustees of Michigan State University of
Agriculture and Applied Science,
Television Corporation of
Michigan, Inc., Intervenors.
 No. 15306.
 United States Court of Appeals District of Columbia Circuit.
 Argued May 19, 1960.
Decided June 16, 1960.
 
 Mr. Robert M. Booth, Jr., Washington, D.C., for appellant.
 Mr. James T. Brennan, Jr., Counsel, Federal Communications Commission, with whom Messrs. John L. FitzGerald, Gen. Counsel, Federal Communications Commission, and Max D. Paglin, Asst. Gen. Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, also entered an appearance for appellee.
 Mr. Leland W. Carr, Jr., Lansing, Mich., of the bar of the Supreme Court of Michigan, pro hac vice, by special leave of court, for intervenor Bd. of Trustees of Mich. State University of Agriculture and Applied Science. Mr. Maurice R. Barnes, Washington, D.C., was on the brief for intervenor Bd. of Trustees of Mich. State University of Agriculture and Applied Science.
 Mr. Leo Resnick, Washington, D.C., for intervenor Television Corp. of Mich., Inc.
 Before PRETTYMAN, Chief Judge, and BASTIAN and BURGER, Circuit judges.
 BURGER, Circuit Judge.
 
 
 1
 In January 1954, the Federal Communications Commission assigned VHF television Channel 10 to the cities of Parma, Michigan, and Onondaga, Michigan, in combination.[1] Five broadcasting corporations applied for the channel, two of them (intervenors) seeking it on a sharetime basis. After appropriate hearings, the Commission awarded the channel to intervenors.[2] Only the appellant, Jackson Broadcasting & Television Corp., seeks review.
 
 
 2
 Appellant's argument is essentially this: (a) the 1954 allocation of Channel 10 was primarily intended as an award to Jackson, Michigan; any other intent would be violative of Sec. 307(b) of the Communications Act;[3] (b) the award to intervenors, one of whom has its broadcasting studio at East Lansing, 35 miles from Jackson, would deprive Jackson of that 'transmission service' to which it is entitled under the Commission's express interpretation of Sec. 307(b).[4]
 
 
 3
 We cannot agree. In allocating Channel 10, the Commission was concerned with an award within a relatively small triangular area 'in the south central portion of Michigan * * * west of Jackson amd south of Lansing.'[5] Parma and Onondaga were selected as the station cities since they were centrally located in the area, and transmission there was compatible with Commission rules as to channel allocation.[6] The record is clear that Jackson alone was not intended as the place to be served, except as Jackson is one of the places in the total area to gain reception service.
 
 
 4
 Section 307(b) of the Act provides that the Commission 'shall make such distribution of licenses, frequencies * * * and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same.' This does not mean, however, that Commission frequency grants are limited solely to the environs of one metropolitan area. The Commission may, in a proper case, decide that a given area is so homogeneous in regional needs, character and interests that a single area-wide frequency allocation would best serve the policy of the Act. Huntington Broadcasting Co. v. Federal Communications Comm., 1951, 89 U.S.App.D.C. 222, 192 F.2d 33; Pinellas Broadcasting Co. v. Federal Communications Comm., 97 U.S.App.D.C. 236, 230 F.2d 204, certiorari denied, 1956, 350 U.S. 1007, 76 S.Ct. 650, 100 L.Ed. 869.
 
 
 5
 The intervenors possess studios at Jackson and East Lansing. Considering the relatively small distances involved, we think the studio locations are appropriately accessible and give ample opportunity for local self expression for the entire area.[7] Moreover the greater part of the daily broadcasts will emanate from programs originating in the Jackson studio.[8]
 
 
 6
 Affirmed.
 
 
 
 [1]
 Matter of Amendment of Sec. 3.606, 10 Pike & Fischer RR 71
 
 
 [2]
 The Television Corporation of Michigan is a commercial television station with its principal studio at Jackson, Michigan. Under the award it proposes to operate approximately 66 hours a week out of its Jackson and Onondaga studios. Its channel sharer, State Board of Agriculture, is the governing body of Michigan State University. It will operate an educational television schedule for 38 hours a week from its studios at East Lansing
 
 
 [3]
 49 Stat. 1475 (1936), 47 U.S.C.A. 307(b)
 
 
 [4]
 According to Commission policy, 'transmission service' is the 'opportunity which a * * * station provides for the development and expression of local interests, ideas, and talents and for the production of * * * programs of special interest to a particular community.' A most significant element of such service is the studio location, which best serves 'as a medium for local self expression' so long as it is 'reasonably accessible * * * for the origination of local programs.' See Commission Report & Order, Docket No. 8747, 1 Pike & Fischer RR 91:465, 91:466 (1950)
 
 
 [5]
 10 Pike & Fischer RR at 71. The area itself is formed by a triangle of which Lansing is the northern apex, with Battle Creek and Jackson as the west and east corners
 
 
 [6]
 See F.C.C. Radio Regulations, 3.610, 3.611, 47 C.F.R. 282-84 (1958)
 
 
 [7]
 See note 4, supra
 
 
 [8]
 See note 2, supra